UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. CR410-266 |
| ) | |
| BERNARD HASAN MURRAY ) | |

## REPORT AND RECOMMENDATION

Defendant has moved to suppress the evidence seized by a Richmond Hill, Georgia police officer during the warrantless search of a rental vehicle that he was operating with the permission of the lessee but without the authority of the rental company. (Doc. 18.) The government contends that defendant lacks standing to contest the legality of the search under the Fourth Amendment because he could have no reasonable expectation of privacy in a vehicle that he was not authorized to drive. This presents a question that has yet to be decided by the Supreme Court or the Eleventh Circuit. The Court finds that defendant lacks standing to object to the search, but the search was lawful in any event.

## I. FACTS[1]

In the early morning hours of January 27, 2010, Officer Ruben Acosta of the Richmond Hill Police Department monitored traffic on Interstate 95 from his police cruiser. At around 1:50 a.m., he spotted a late model Chevrolet Malibu heading northbound with an inoperative tag light. He caught up with the vehicle, confirmed that the Malibu's tag light was indeed out (by briefly turning off his headlights), and pulled the car to the side of the road. Acosta intended to issue a warning, but when he approached the driver he noted the strong odor of burnt marijuana emanating from the vehicle. He made no comment about the marijuana odor at that time but simply asked the driver for his paperwork and told him that he had pulled him over for the unlit tag light. After the driver (defendant Murray) produced his license and a rental agreement for the vehicle, Acosta returned to his police cruiser to conduct a records check using his onboard laptop computer. Nothing unusual came up.

Acosta reapproached the Malibu and asked Murray whether the car

---

[1] The Court's recitation of the facts is drawn from the testimony of the police officer who conducted the traffic stop, the testimony of defendant, and a video recording of the stop introduced by the government.

2

was rented in his name. Murray explained that it had been rented in his friend's name, whom he could only identify as "Mario."[2] After asking Murray about his plans, Acosta asked him to step to the rear of his vehicle. Murray complied. Acosta then asked for consent to search the vehicle,[3] but Murray was argumentative and ultimately declined to provide consent. At this point Officer Acosta advised Murray that he had smelled the odor of marijuana coming from his vehicle and did not require his consent to search. Murray then admitted that he had just smoked some marijuana and stated that a "roach" -- the remnants of a joint -- was located in the center console.

Acosta called for backup, but before any other officers arrived on the scene he entered Murray's vehicle to search for the "roach."[4] He couldn't find it in the center console, but he did note a powerful smell of fresh marijuana that filled the car. He allowed Murray to step in the car to retrieve the "roach," but Murray couldn't find it either. Continuing with his search of the car, Acosta noted marijuana "shake" or residue on

---

[2] The rental agreement itself is difficult to make out, but it shows that the car was rented to a "Mario." (Doc. 29-1.)

[3] Acosta explained that though he thought he had probable cause, he requested consent just to provide an additional independent basis supporting the search.

[4] Acosta violated Richmond Hill police policy by entering the vehicle without backup present, and he was later reprimanded for his non-compliance with that policy. He explained that this was his only reprimand to date.

the floorboards and determined that the overpowering stench of fresh marijuana was coming from the trunk. He pulled down the foldable rear seats and spotted a trash bag that appeared to be full of marijuana. A further inspection revealed nearly 50 pounds of marijuana in the trunk. Officer Acosta then arrested Murray.

## II. ANALYSIS

Murray contends that the evidence found by the officers during their search[5] of the Malibu was seized in violation of his Fourth Amendment rights. (Doc. 18 at 1.) Specifically, he contends that Officer Acosta fabricated his "plain smell" observation and unreasonably delayed the stop beyond the time necessary to issue a traffic citation. Before proceeding to the merits of the dispute, however, the Court must first determine whether Murray has standing to raise such a claim.

### A. Standing

To challenge the legality of a vehicle search, a defendant must demonstrate that he manifested a subjective expectation of privacy in the vehicle and that his privacy expectation is one that society is prepared to recognize as reasonable or "legitimate." *Rakas v. Illinois*, 439 U.S. 128, 143 & n.12 (1978); *United States v. McBean*, 861 F.2d 1570, 1573 & n.7 (11th Cir. 1988). "A legitimate expectation of privacy [must] be proven

---

[5] Defendant has never contended that the initial stop of the Malibu was constitutionally improper.

4

by factors beyond mere possession, such as a right to exclude or a right to privacy." *United States v. Espinosa-Orlando*, 704 F.2d 507, 512 (11th Cir. 1983) (citing *Rakas*, 439 U.S. at 143-44 & n.12). It is a "fact-specific" inquiry. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). The government does not argue that defendant lacked an actual, subjective expectation of privacy in the Malibu but asserts that his privacy expectations are not the kind that society is prepared to recognize as legitimate, as defendant was not listed as an authorized driver on the Enterprise Rent-A-Car contract.

Neither the Supreme Court nor the Eleventh Circuit has addressed the question of whether the driver of a rental vehicle, who has the permission of the renter but not the rental company, can claim a reasonable expectation of privacy in the vehicle sufficient to challenge the lawfulness of its search.[6] *See United States v. Crisp*, 542 F. Supp.2d

---

[6] The Eleventh Circuit, however, has held that two codefendants who agreed to share costs of a vehicle rented by another codefendant lacked standing to challenge the warrantless search of that unoccupied vehicle where they had no "property or possessory interest in the vehicle" (as both had been detained after deplaning and had never gained access to the vehicle). *United States v. McCulley*, 673 F.2d 346, 352 (11th Cir. 1982). *McCulley* relied on *United States v. McConnell*, 500 F.2d 347, 348 (5th Cir. 1974), which concluded that defendant had no standing to contest the search of a rental vehicle leased by a codefendant simply because the rental fee had been charged to defendant's credit card. Neither of these cases, however, involved defendants who were driving a rental vehicle with the permission of the lessee but without the authority of the rental company.

Addressing an issue of first impression in the circuit courts, the Eleventh Circuit has also held that a person listed on a vehicle rental contract as an *authorized*

1267, 1276 (M.D. Fla. 2008), *aff'd on other grounds*, 355 F. App'x 378 (11th Cir. 2009). The circuit courts that have addressed this question have to come to different conclusions. Some courts appear to adopt a bright-line approach, reasoning that an individual not listed on the rental agreement as an authorized driver lacks standing to object to a search even though he has the permission of the renter. *See United States v. Wellons*, 32 F.3d 117, 119 (4th Cir. 1994); *United States v. Boruff*, 909 F.2d 111, 117 (5th Cir. 1990); *United States v. Obregon*, 748 F.2d 1371, 1374-75 (10th Cir. 1984). Other circuits have concluded that an unauthorized driver of a rental car may have standing to challenge the warrantless search of the car where he received permission from the lessee to use the vehicle. *See United States v. Thomas*, 447 F.3d 1191, 1197-98 (9th Cir. 2006); *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998); *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995); *see also United States v. Smith*, 263 F.3d 571, 586 (6th Cir. 2001) (rejecting a bright-line test and adopting a totality-of-the-circumstances approach).

---

driver retained a reasonable expectation of privacy in the vehicle four days after the rental contract expired. *Cooper,* 133 F.3d at 1398-1402 (finding that defendant in that case had standing to challenge the warrantless search of the overdue rental car, which the rental company had not repossessed at the time of search). So, the Eleventh Circuit has made clear that the violation of the terms of a rental contract does not inevitably lead to a finding of no standing. *See also United States v. Miller*, 821 F.2d 546, 548 (11th Cir. 1987) (driver of a borrowed car possesses a reasonable expectation of privacy sufficient to contest its warrantless search).

It is unclear how the Eleventh Circuit would view the privacy expectations of a motorist who has been allowed to operate a rental car with the consent of the renter but in direct violation of the terms of the rental contract. It is doubtful, however, that the circuit court would hold *categorically* that in no circumstance could an unauthorized driver have a reasonable expectation of privacy in car rented by another. In a previous case addressing the privacy expectations of a renter (and authorized driver) in an overdue rental car, the court rejected the government's contention that the renter's "legitimate" expectation of privacy ceases the moment the rental contract expires. *Cooper*, 133 F.3d at 1398-1402. Citing *Rakas*, the Eleventh Circuit noted that the Fourth Amendment does not lend itself to such "hard-and-fast rules." *Id.* at 1401. The court further noted that private contract rights cannot be allowed to determine the scope of Fourth Amendment protections, stating that "'arcane distinctions developed in property and tort law . . . ought not . . . control' the reasonableness of an expectation of privacy." *Id.* (quoting *Rakas*, 439 U.S. at 143). This reasoning seems inconsistent with a bright-line rule that under no circumstances would society be prepared to recognize as "legitimate" an unauthorized driver's privacy expectations in a rental vehicle. Indeed, since the Eleventh Circuit has clearly recognized that a person who borrows a car from its owner can claim a reasonable expectation of privacy in the borrowed vehicle, *Miller*,

7

821 F.2d at 548-49, surely the same principle would apply to a borrower of a rental car who does not know that the car is a rental or who has been led to believe that the rental company has authorized the lessee to permit others to drive the car. The terms of a private rental contract could not trump the borrower's reasonable privacy expectations in such contexts. *See Cooper*, 133 F.3d at 1401 & n. 18.

Nor is the Court prepared to say that only an "innocent borrower" of a rental car -- i.e., one who is unaware that he is a prohibited driver under the terms of the lease -- can ever claim the protections of the Fourth Amendment. For there may be circumstances under which a person who is operating a vehicle in knowing violation of the rental contract could nevertheless have a legitimate expectation of privacy in that vehicle.[7] But the Court does not believe that society would accept as reasonable the subjective privacy expectations of this defendant. Murray not only knew that he was not an authorized driver of the rental vehicle, he practiced a deception upon the rental car company in

---

[7] To consider just one possibility, assume that a person who has rented a vehicle during an out-of-town trip falls ill and is hospitalized, leaving the rental vehicle at a local motel. Would a spouse, business partner, or friend of that individual, who drives the rental car for the sole purpose of returning it to the rental company, lack a reasonable expectation of privacy in the vehicle simply because they are aware that they are not listed as an authorized driver? *Cooper*, which gives great emphasis to the particular circumstances of each individual case, would seem to suggest otherwise. 133 F.3d at 1399.

obtaining that vehicle. He conceded at the suppression hearing that he had arranged for "Mario" (whose last name he could not recall) to rent the vehicle because he (Murray) lacked a credit card and therefore was unable to rent it himself. Through this trickery, the two men deceived Enterprise into believing that Mario would be the sole driver of the Malibu when, in fact, both men knew that the car was intended for Murray's exclusive use. So, this case involved not merely a minor breach of a contractual agreement but a form of fraud by Murray and his companion. *See United States ex rel Main v. Oakland University*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]ailure to honor one's promise is (just) breach of contract, but making a promise one *intends* not to keep is fraud."); *United States v. D'Amato*, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994) ("Failure to comply with a contractual obligation is . . . fraudulent when the promisor never intended to honor the contract.").

In *Cooper*, the Eleventh Circuit noted that Cooper's expectation of privacy in the overdue rental car was enhanced by the fact that he was "in privity of contract (albeit in breach) at the time of the search." *Cooper*, 133 F.3d at 1400-01. Unlike the holdover-lessee situation at issue in *Cooper*, in this case Murray was not in privity of contract with Enterprise. Nor did he seek to be listed as another authorized driver of the vehicle that Mario had rented in his own name. True, *Cooper* did not rule out the possibility that an unauthorized driver of a rental

9

vehicle might be able to challenge its search in some circumstances. *Id.* at 1400 & n.13 (noting that other circuits had split on the issue). But the Eleventh Circuit was not faced with a situation where the unauthorized driver colluded with the lessee of the vehicle to deceive the rental car company as to who would be actually operating their vehicle. The Court concludes that this form of deception defeats the legitimacy of Murray's privacy expectations in the rental car. Therefore, he is unable to claim the protections of the Fourth Amendment.

## B. Reasonableness of the Search

Even if Murray had a legitimate expectation of privacy in the rental vehicle, he has pointed to no conduct by Officer Acosta that infringed his Fourth Amendment rights. Acosta encountered defendant during a lawful traffic stop occasioned by his observation that the Malibu's tag light was inoperative, in violation of O.C.G.A. § 40-8-23.[8] Upon approaching the driver of the Malibu, Officer Acosta testified that he immediately smelled the strong odor of marijuana coming from the

---

[8] The statute provides in pertinent part:

(d) Either a taillight or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. Any taillight or taillights, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted.

O.C.G.A. § 40-8-23(d).

vehicle. This observation alone furnished probable cause to search the vehicle. *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search"); *United States v. Salley*, 341 F. App'x 498, 500 n.2 (11th Cir. 2009) (same). At the very least, it provided reasonable suspicion to believe that Murray was engaged in criminal activity and that marijuana residue was inside the vehicle, *Salley*, 341 F. App'x at 500, a suspicion that blossomed into probable cause upon Murray's admission that he had just smoked a joint.

While Murray suggests that Acosta lied about smelling burnt marijuana and points out that the "roach" was never located, Officer Acosta insisted that he smelled burned marijuana, and Murray himself admitted that he had just smoked a joint. The presence or absence of the "roach" itself is of little consequence. It could have been easily disposed of through an open window or down Murray's throat. Based upon the hearing testimony and the video, the Court is satisfied that Acosta smelled marijuana coming from the car even if he didn't play that card until later in his conversation with Murray. Accordingly, Acosta did not unreasonably prolong the traffic stop in order to obtain a justification to search the vehicle.[9]

---

[9] It is true that absent reasonable suspicion or the motorist's consent, a traffic stop can last no "'longer than necessary to process the traffic violation.'" *United*

11

It is well settled that "[a] warrantless search of a vehicle is permitted if (1) there is probable cause to believe the vehicle contains contraband, and (2) there are exigent circumstances which necessitate a warrantless search or seizure." *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990); *United States v. Alexander*, 835 F.2d 1406, 1408-09 (11th Cir. 1988). "The ability of [a] vehicle to become mobile is sufficient to satisfy the exigency requirement. . . . 'Put differently, the mobility of an automobile is exigency enough.'" *United States v. Forker*, 928 F.2d 365, 369 (11th Cir. 1991); *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006) (explaining the "automobile exception" to the Fourth Amendment warrant requirement); *Alexander*, 835 F.2d at 1409. Thus, as the officers had probable cause to search the vehicle for evidence of criminal activity and the requisite exigent circumstances were present, a warrantless search of the Malibu was constitutionally permissible. *United States v. Watts*, 329 F.3d 1282, 1284-86 (11th Cir. 2003).

---

States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999) (quoting *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997)). In every traffic stop, however, an officer may not only conduct a routine check of the motorist's driver's license and vehicle registration but also run a criminal history check. *United States v. Purcell*, 236 F.3d 1274, 1278-79 (11th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648, 657-59 (1979)). Such a routine records check was conducted by Officer Acosta in this case, and since the officer had probable cause to search from the outset of the traffic stop, unreasonable delay is not an issue presented on this record.

## III. CONCLUSION

Defendant lacks a legitimate expectation of privacy in the vehicle necessary to assert the protections of the Fourth Amendment, but even if he has sufficient standing to claim those protections his motion to suppress should nevertheless be **DENIED**, for he has not shown that the warrantless search of the Malibu violated any of his constitutional rights.

**SO REPORTED AND RECOMMENDED** this <u>16th</u> day of March, 2011.

/s/ G.R. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA